UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENG PETER MAKUEY,<br><br>               Petitioner,<br><br>    v.<br><br>BRUCE SCOTT et al.,<br><br>               Respondents. | CASE NO. 2:26-cv-00632-DGE<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) |

Before the Court is Petitioner Deng Peter Makuey's amended petition for writ of habeas corpus and second motion for temporary restraining order ("TRO").  (Dkt. Nos. 3, 8.)  For the following reasons, the Court DENIES the petition and motion for temporary restraining order.

## I.   BACKGROUND

The Court directs individuals toward *Makuey v. Scott et al.*, No. 2:25-cv-02135-DGE ("*Makuey* I") for a complete recitation of the background facts.

Petitioner is subject to a 2012 final order of removal to Ethiopia, or South Sudan in the alternative.  *Makuey* I, Dkt. No. 11 at 2.  On December 16, 2025, the Court granted Petitioner's

petition for writ of habeas corpus and ordered him released from detention. *Id.*, Dkt. No. 17. The Court further ordered that Respondents may not re-detain Petitioner until "after he is provided written notice of the basis for revoking his release and an appropriate opportunity to respond to [the] notice." *Id.* at 14. Petitioner was released from the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") on an Order of Supervision the following day. *Makuey* I, Dkt. No. 19 at 1.

On December 17, 2025, South Sudan issued Petitioner a travel document. (Dkt. Nos. 15 at 2; 16-2.) Petitioner reported for Immigration and Customs Enforcement ("ICE") check-ins on December 23, 2025 and January 23, 2026 without issue. (*See* Dkt. No. 16-3 at 2.) On February 18, 2026, Petitioner reported to ERO in Portland, Oregon and was served with a Notice of Revocation of Release, which revoked his Order of Supervision. (Dkt. Nos. 15 at 2; 16-4 at 2.) The Notice of Revocation indicated that ICE had the ability and means to effectuate Petitioner's removal because ICE obtained a travel document. (Dkt. No. 16-4 at 2.) After receiving notification of the revocation, and before being detained, Petitioner was given the opportunity to make a personal phone call, talk with his attorney on the phone, and give a written statement. (Dkt. No. 15 at 2.) Petitioner declined to give a written or oral statement because his attorney was not present. (Dkt. No. 16-4 at 4; 16-6 at 2.) Petitioner was subsequently transferred to NWIPC and booked on a charter flight to South Sudan, which was scheduled to depart on February 28, 2026. (Dkt. No. 15 at 3.)

On February 19, 2026, the Department of Homeland Security issued Petitioner a warrant of removal. (Dkt. No. 16-7 at 2.) In a "Status Report" filed February 20, 2026, Petitioner informed the Court that ICE had re-detained him in violation of the Due Process Clause of the Fifth Amendment. (Dkt. No. 1.) The Court directed Plaintiff to file an amended habeas petition

setting forth all claims for relief.  (Dkt. No. 2.)  On February 25, 2026, Petitioner filed an amended petition for writ of habeas corpus and a subsequent motion for TRO.  (Dkt. Nos. 3, 4.) The Court provisionally granted Petitioner's motion for TRO to maintain the status quo and allow the Court to review the merits of the motion.  (Dkt. No. 5.)

On February 27, 2026, Petitioner moved to withdraw his first motion for TRO, and the Court denied the motion for TRO as moot.  (Dkt. Nos. 7, 9.)  However, based on a conversation in which Petitioner alleges an ICE officer informed Petitioner "that if he has reasonable fear of removal to South Sudan, he would be able to make that claim before an immigration judge[,]"[1] Petitioner "changed his mind," and filed a second motion for TRO seeking to prevent his removal while he pursues a reasonable fear interview.  (Dkt. No. 8 at 2.)

Officer Carnevale attests Petitioner's travel document is likely to expire prior to resolution of this matter; thus, ERO is "actively engaged in efforts to secure a new travel document."  (Dkt. No. 15 at 3.)  Officer Carnevale believes there is a "substantial likelihood that a new travel document will be obtained and [Petitioner] will be removed in the reasonably foreseeable future."  (*Id.* at 4.)

---

[1] ERO Officer Joseph Carnevale stated in a declaration,

> [A]s the primary officer who has interacted with Petitioner, I did not inform him that he was entitled to any interview with [United States Customs and Immigration Services ("USCIS")].  I can find no indication in any records that any ICE officer made any such representation to Petitioner.  It would be highly unusual for any ICE officer to make any such representation, as Petitioner is being removed pursuant to an order of removal issued by an immigration judge ("IJ") and no USCIS process exists for review of the initial execution an IJ's order of removal when the removal is to a country specifically named in the order of removal.

(Dkt. No. 15 at 3.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 3

On March 3, 2026, the Parties filed a proposed stipulated briefing schedule, requesting to brief the second motion for TRO simultaneously with the pending habeas petition.  (Dkt. No. 12.)  The Court entered the stipulated briefing, ordering a responsive brief by March 16, 2026, and a traverse by March 23, 2026.  (Dkt. No. 13.)  The Parties timely filed their briefing.  (*See* Dkt. Nos. 14, 19.)

## II.    JURISDICTION

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241.  "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–1212 (9th Cir. 2011)).

## III.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 4

## IV.     ANALYSIS

Petitioner argues Respondents revoked his Order of Supervision in violation of the Due Process Clause and asks the Court to order his immediate release and stay his removal so he can reopen his removal proceedings.  (Dkt. No. 3 at 6–8.)[2]

### A.  Due Process Clause

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  *Mathews* employs a three-factor test looking at (1) "the

---

[2] In his traverse, Petitioner argues that his removal order "was obtained in violation of his due process right to seek relief from removal." (Dkt. No. 19 at 3.)  The Court does not entertain this new argument because [i]t is well-settled. . . that a habeas petitioner cannot amend his petition—much less introduce wholly new claims—in his reply brief." *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2025 WL 3286917, at *10 (S.D.N.Y. June 24, 2025) (emphasis added), *report and recommendation adopted in part, rejected in part*, No. 24-CV-10053 (VSB) (BCM), 2026 WL 686499 (S.D.N.Y. Mar. 11, 2026); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Calderon v. Noem*, No. 2:25-CV-2136-LK-TLF, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025).

private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

    1.  Private interest

        The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). This Court has previously identified that an individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey* I, Dkt. No. 17 at 9 (finding the petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

        The Court (again) concludes that because Petitioner was allowed to remain on his own recognizance after he was released, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Accordingly, the first *Mathews* factor favors Petitioner.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the 90-day removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, No. SA CV 25-1905-JFW(DBT), 2025 WL 4666804, at *4 (C.D. Cal. Sept. 3, 2025) (citation omitted). 8 C.F.R. § 241.4 governs the release and the revocation of such release of noncitizens who are subject to a final removal order. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). Release may be revoked in the exercise of discretion when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against" a noncitizen. 8 C.F.R. § 241.4(l)(2)(iii).[3] If ICE chooses to re-detain a noncitizen after they have

---

[3] Petitioner argues revocation of an Order of Supervision requires the government to prove "one of the conditions in 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13(i)(3), such as a violation of the conditions of release or a change in circumstances." (Dkt. No. 19 at 10.) But 8 C.F.R. § 241.4(l)(2)(iii) clearly allows the government to revoke release to enforce a removal order.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 7

been released, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4 (l)(1).

Here, ICE provided Petitioner with a Notice of Revocation of Release, which indicated his release was revoked pursuant to 8 C.F.R. § 241.4(l) because "[i]t is appropriate to enforce the removal order entered against [him] as ICE has the ability and means to effectuate [his] removal." (Dkt. Nos. 16-4 at 2, 4; 16-5 at 2.) The Notice informed Petitioner that "ICE has obtained a travel document and scheduled [his] removal to take place no later than March 17, 2026." (Dkt. No. 16-4 at 2–3.) Petitioner also received an informal interview, where he had the opportunity to respond to the reasons for the revocation—though he chose not to participate because his attorney was not present. (Dkt. No. 16-6 at 2.)

Petitioner argues, with no apparent citation to authority, that "Due Process requires the government to provide written notice of the reasons for revocation and sufficient time to secure counsel and to prepare for the hearing" which must occur before a neutral and detached decision-maker.[4] (Dkt. No. 19 at 10–11.) Instead, Respondents were required to follow agency

---

[4] Petitioner appears to use "*Id.*" to support her position, but such citation normally is used to cite to a single authority. (*See* Dkt. No. 19 at 11.) However, the preceding citation includes three cases, one being *Matthews* and two involving immigration habeas matters. (*See id.* at 10.) Also, both of the immigration decisions cited are distinguishable. *Aguilar v. Hermosillo* did not involve a final order of removal. No. 2:26-cv-00537-BAT, 2026 WL 706658, *1 (W.D. Wash. Mar. 13, 2026). And while *Salee v. Bondi* did involve a final order of removal, the record did not identify that a travel document had been secured. No. 2:25-cv-02677-TLF, 2026 WL 221513, *1 (W.D. Wash. Jan. 28, 2026).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 8

regulations set forth in 8 C.F.R. § 241.4(l).  Accordingly, the second *Mathews* factor favors Respondents.

    3.  <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.  In *Rodriguez Diaz*, the Ninth Circuit noted the government's strong interest in enforcing our nation's immigration laws.  53 F.4th at 1208.  Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S. at 690.  Furthermore, the government has an interest in detaining noncitizens to effectuate their removal.  Here, where Respondents had a valid travel document, and followed 8 C.F.R. § 241.4(l) in revoking Petitioner's Order of Supervision, Petitioner has received due process.

Accordingly, the Court DENIES Petitioner's due process claim.

**B.  The Court Lacks Jurisdiction to Stay Petitioner's Removal Pursuant to 8 U.S.C. § 1252(g)**

Petitioner argues he should be given "a minimum 10-day opportunity to demonstrate 'reasonable fear' of removal to South Sudan, and to move to reopen his immigration proceedings."  (Dkt. No. 3 at 6.)  However, the Court lacks jurisdiction to grant a request to delay execution of a removal order.

Per 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien."  8 U.S.C. § 1252(g) (emphasis added).  The Supreme Court has construed § 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to impose judicial

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 9

constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999); *see Arce v. United States*, 899 F.3d 796, 800–801 (9th Cir. 2018) (holding that § 1252(g) is limited to the three specific *discretionary* actions). "Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id.*

The Ninth Circuit made clear that § 1252(g) strips district courts of jurisdiction over claims that challenge the decision to execute a removal order, notwithstanding pending applications for relief. *See Rauda v. Jennings*, 55 F. 4th 773, 778 (9th Cir. 2022). The petitioner in *Rauda*—a citizen of El Salvador subject to a final removal order—sought to reopen his removal proceedings and asked the district court to enjoin the government from executing the removal order until the Board of Immigration Appeals ruled on his motion to reopen his request for relief under the Convention Against Torture ("CAT"). *Id.* at 776. The Ninth Circuit held that § 1252(g)'s "plain language" barred the district court's jurisdiction over the petitioner's claims. *Id.* at 777–778. It reasoned that "[t]he execution of [the petitioner's] removal order is precisely what" he challenged, meaning to "enjoin the government from removing him—or in other words, enjoin 'action by the Attorney General to . . . execute removal orders against [him].'" *Id.* at 777 (quoting § 1252(g)). The Ninth Circuit further rejected the petitioner's argument that applying § 1252(g) in this way effectively deprived him of his statutory right to move to reopen because the petitioner "will continue to have access to the process guaranteed to him under the statute even if he is removed." *Id.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 10

Relying on *Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025), Petitioner argues that § 1252(g), if applied to this case, would violate the Suspension Clause. (Dkt. No. 19 at 4–5.) The Suspension Clause provides "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. The plaintiff in *Ibarra-Perez* did not challenge removal, but instead challenged only the country to where he was to be removed. 154 F.4th at 997. But *Ibarra-Perez* is distinguishable; there, "the government had not asked for an order removing [the petitioner] to Mexico, and the [immigration judge] did not designate Mexico as a country to which he could be removed." 154 F.4th at 991. Here, the immigration judge ordered Petitioner's removal to Ethiopia, *or South Sudan in the alternative. Makuey* I, Dkt. No. 11 at 1. Because South Sudan is identified in the order of removal, Petitioner necessarily is challenging the *execution* of his removal order. *See Ibarra-Perez*, 154 F.4th at 997.

Petitioner also relies on *Diaz-Amezcua v. Barr*, 402 F. Supp. 3d 963 (W.D. Wash. 2019). (Dkt. No. 19 at 6.) Again, this case is unpersuasive. There, the court found that, "[i]n the absence of Ninth Circuit precedent on point," and relying on a dissenting opinion in a Sixth Circuit matter, the Suspension Clause applied to the petitioner. *Diaz-Amezcua*, 402 F. Supp. 3d at 966 (citing *Hamama v. Adducci*, 912 F.3d 869, 882–883 (6th Cir. 2018) (White, J., dissenting)). However, *Diaz-Amezcua* was decided three years before *Rauda*, where the Ninth Circuit explicitly foreclosed this argument. 55 F.4th at 779. The *Rauda* court held the Suspension Clause did not preserve judicial review in this case because "[r]ather than seeking the traditional use of habeas, [the petitioner] specifically wants to avoid being released (into El Salvador). As the [Supreme] Court noted, the common law reserves habeas relief for remedies from unlawful *custody*." *Id.* Because the petitioner's claims were outside the scope of habeas

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 11

relief, there was no violation of the Suspension Clause. *Id.* at 779–780. Here, like the petitioner in *Rauda*, Petitioner seeks to remain in the United States, and specifically to avoid being released to South Sudan. Thus, the Suspension Clause does not preserve judicial review.[5]

### C. CONCLUSION

The Court DENIES Petitioner's petition for writ of habeas corpus and motion for temporary restraining order.[6] (Dkt. Nos. 3, 8.) The Clerk is directed to close the matter.

Dated this 6th day of April, 2026.



David G. Estudillo
United States District Judge

---

[5] Petitioner contends he was never given an opportunity to claim fear of removal to South Sudan, and he has a due process right to seek relief under the CAT. (Dkt. No. 19 at 3–4.) However, an immigration judge ordered Petitioner removed to South Sudan in 2012, and Petitioner acknowledges that "the only procedural mechanism for that claim is a motion to reopen for relief under CAT[.]" (*Id.* at 2.)

[6] Because the Court denies Petitioner's habeas petition, it necessarily concludes that Petitioner cannot show a likelihood of success on the merits or a serious question going to the merits to warrant granting the motion for temporary restraining order. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1132 (9th Cir. 2011).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 3) AND MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8) - 12